Alison K. Guernsey
Clinical Professor
UNIVERSITY OF IOWA COLLEGE OF LAW
380 Boyd Law Building
Iowa City, IA 52245
NY #4667366
(319) 335-9092 phone
(319) 353-5445 fax
alison-guernsey@uiowa.edu
Attorney for Defendant

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR-18-00447-001-PHX-JJT |
|---|---|
| Plaintiff, | **Response in Support of Uncontested Motion for a Reduced Sentence** |
| v. | |
| Yolanda Lorena Young, | |
| Defendant. | |

**Table of Contents**

I.    Background ................................................................................................ 2

      A. While Ms. Young was at FCI Dublin and working in UNICOR, her
         supervisor, Officer Nakie Nunley harassed, assaulted, and raped her ... 3

      B. Ms. Young could no longer bear the abuse, so she quit her job and
         decided to risk reporting Officer Nunley. .................................................. 4

      C. Ms. Young cooperated with the authorities, resulting in Officer Nunley
         being indicted on 9 counts of sexual abuse. ............................................ 5

      D. Ms. Young's mental health has been detrimentally affected by the
         extrajudicial punishment she has suffered during her incarceration. ..... 6

      E. Ms. Young has made the best of a horrendous situation and continues
         to become a better version of herself ....................................................... 7

II.   Legal Argument ......................................................................................... 8

A.  Ms. Young's sexual abuse at FCI Dublin given its gravity, her history, her cooperation with law enforcement, and her lack of mental-health treatment justifies "time served." .............................................................. 8

B.  Ms. Young's sex abuse is "extraordinary and compelling" under the new Amendments to the U.S. Sentencing Guidelines. .................. 12

C.  Section 3553(a) weighs in favor of Ms. Young's immediate release... 13

1.  Reducing Ms. Young's sentence will not diminish the seriousness of the offense and provides just punishment................................... 14

2.  Ms. Young's release is important so that she can get treatment............................................................................................ 14

3.  Ms. Young does not need any additional prison time to be deterred. ...................................................................................... 15

4.  Ms. Young's release plan ensures that she will be an asset to her community and have strong familial support upon release........................................................................................ 16

III.   Conclusion................................................................................................. 17

Yolanda Young is elated that the federal Bureau of Prisons ("BOP") has agreed that her rape and abuse by former Officer Nakie Nunley is an "extraordinary and compelling" reason for a reduced sentence.[1] She has no objection to going home. However, as the Court decides whether to grant the BOP's motion, it is important for Ms. Young to detail what happened to her while she was at FCI Dublin and respond directly to the BOP's conclusion that her circumstances are "extraordinary and compelling."[2]

Ms. Young is choosing not to file her Response under seal. The Government has no objection to her Response being public, despite the sealed nature of its Motion. Ms. Young made this choice understanding that what happened to her will become public.

## I.    Background

When Ms. Young arrived at FCI Dublin in 2018, she saw her sentence as a way to reinvent herself and decided to work hard to gain transferrable job skills.[3] In January 2019, she began working in the Phoneticall Department of UNICOR, a prison-based employment program.[4] Ms. Young was a customer-service representative and excelled at her job.[5] By 2021, she had the highest pay-grade level, was earning longevity pay for her tenure, and she was on her way to apprenticeship certification.[6] Ms. Young found purpose in her job.[7] However, Ms. Young's life at FCI Dublin was about to change.

---

[1] ECF No. 36 (Sealed Motion).
[2] *Id.*
[3] Ex. A at 20, ¶ 127–30 (Declaration).
[4] *Id.* at 1, ¶ 7.
[5] *Id.* at 1, ¶ 7; Ex. B at 5, 11, 16 (BOP Records).
[6] Ex.  A at 2, ¶ 9 (Declaration).
[7] *Id.* at 1, ¶ 8.

### A. While Ms. Young was at FCI Dublin and working in UNICOR, her supervisor, Officer Nakie Nunley harassed, assaulted, and raped her.

Officer Nakie Nunley was Ms. Young's supervisor at UNICOR.[8] He would soon become her rapist. Although this response will highlight *some* of the abuse Ms. Young suffered, Ms. Young's attached declaration provides a much more complete picture of the horror that she suffered.[9]

In November 2020, Officer Nunley began grooming Ms. Young. He started by telling Ms. Young that he had a dream about her, coyly leaving out what the dream was about.[10] Then, it escalated. Officer Nunley began touching Ms. Young and leaving her graphic sexual notes that described how he would sexually assault her.[11] There were twelve notes in total and copies are in Ms. Young's Declaration.[12] Ms. Young tried to get help by showing some of these notes to another officer, Officer Riddle.[13] He simply laughed.[14] And when Ms. Young asked if she was safe, he just stared.[15]

On April 20, 2021, Officer Nunley acted on his notes and raped Ms. Young.[16] On the day she was raped, Ms. Young had been attempting to leave work when Officer Nunley forced her back into the building with his closed fist.[17] Officer Nunley then took Ms. Young

---

[8] *United States v. Nunley*, 3:23-cr-00213-YRG, Plea Agreement at 3, ECF No. 14; Ex. A at 10 (Declaration).
[9] *See* Ex. A at 1–17, ¶ 6–104 (Declaration).
[10] *Id.* at 2, ¶ 11.
[11] *Id.* at 2–3, ¶ 14–15, ¶ 17–20.
[12] *Id.* at 5–10, ¶ 39–40.
[13] *Id.* at 3, ¶ 21–22.
[14] *Id.* at 3, ¶ 23.
[15] *Id.* at 3, ¶ 24.
[16] *Id.* at 3–4, ¶ 26–32.
[17] *Id.* at 3, ¶ 27.

into the UNICOR staff bathroom.[18] There, he forced Ms. Young to perform oral sex before using his penis to penetrate her vagina.[19] Following her rape, Officer Nunley continued writing graphic sexual notes that described other ways he would sexually assault her.[20] He also stalked, groped, threatened, and physically assaulted her.[21]

### B. Ms. Young could no longer bear the abuse, so she quit her job and decided to risk reporting Officer Nunley.

On June 9, 2021, Ms. Young quit her job at UNICOR because she thought it would be the end of the constant harassment and abuse.[22] Instead, Officer Nunley continued stalking, harassing, and taunting her. Ms. Young told FCI Dublin physician, Dr. Tang, that she was assaulted by a BOP staff member and could not sleep.[23] Dr. Tang did not report the assault. On July 7, 2021, Ms. Young tried again to get help. She told Ms. Minor, her former counselor, that Officer Nunley had abused her.[24] Ms. Minor reported Officer Nunley, and Special Investigative Supervisor, Lt. Putnam, spoke with Ms. Young later that day.[25] Ms. Young ultimately gave Lt. Putnam the sexual notes Officer Nunley gave her and a statement describing his abuse.[26] Despite, the clear evidence of abuse, Ms. Young later saw Officer Nunley still on the premises.[27] She asked why, and Lt. Putnam told Ms. Young that he

---

[18] *Id.* at 3, ¶ 29.
[19] *Id.* at 3–4, ¶ 29–32.
[20] *Id.* at 5–10, ¶ 39–41.
[21] *Id.* at 11–12, ¶ 44–60.
[22] *Id.* at 12–13, ¶ 61–62.
[23] *Id.* at 13, ¶ 67.
[24] *Id.* at 15, ¶ 76.
[25] *Id.* at 15, ¶ 78.
[26] *Id.* at 15, ¶ 78–82.
[27] *Id.* at 15, ¶ 83.

wanted to catch Officer Nunley in the act.[28] Eventually, Ms. Young was put in the Special Housing Unit ("SHU") for her "safety."[29] The day Ms. Young was put in the SHU, Officer Nunley was not on the premises.[30] Ms. Young was ultimately transferred to Victorville.[31]

### C. Ms. Young cooperated with the authorities, resulting in Officer Nunley being indicted on 9 counts of sexual abuse.

In August 2021, Ms. Young had still not heard whether the BOP was investigating Officer Nunley.[32] So, Ms. Young emailed the Department of Justice and again reported Officer Nunley's abuse.[33] On July 13, 2023, she saw her persistence pay off. That day, the U.S. Attorney's Office for the Northern District of California filed a nine-count Information charging Officer Nunley with the sexual abuse of five different people in custody at FCI Dublin.[34] The first named victim is identified by her initials, Y.Y., Yolanda Young.[35] On September 5, 2023, Officer Nunley entered a guilty plea to all counts. With respect to Ms. Young, he admitted as follows:[36]

---

[28] *Id.* at 15, ¶ 84.
[29] *Id.* at 16, ¶ 87–88.
[30] *Id.* at 16, ¶ 89.
[31] *Id.* at 16, ¶ 90.
[32] *Id.* at 16, ¶ 92.
[33] *Id.* at 16, ¶ 93, ¶ 96.
[34] *See United States v. Nunley*, 4:23-cr-00213-YGR, Information, ECF No. 1.
[35] *Id.* at 2.
[36] *United States v. Nakie Nunley*, 4:23-cr-00213-YGR, Plea Agreement at 3, at ECF No. 14.

> Y.Y. was an inmate housed at FCI Dublin who worked at the call center at UNICOR. In approximately March 2021, I began leaving Y.Y. notes of a sexual nature on her desk at UNICOR. On approximately April 20, 2021, I took Y.Y. into the staff bathroom at UNICOR. There, as alleged in Count One of the Information, I engaged in sexual acts (hereafter as defined by 18 U.S.C. § 2246(2)) with Y.Y.; specifically, I penetrated Y.Y.'s vulva with my penis and caused her mouth to contact my penis. After I engaged in sexual acts with Y.Y., I continued to write her notes of a sexual nature. On approximately June 10, 2021, after Y.Y. had quit her job at UNICOR, I visited her cell in her housing unit and made sexual remarks to her.

### D. Ms. Young's mental health has been detrimentally affected by the extrajudicial punishment she has suffered during her incarceration.

Not surprisingly, the abuse that Ms. Young has suffered has taken a toll on her mental health. Although Ms. Young has dealt with complex trauma since her childhood,[37] the abuse she suffered at FCI Dublin was intensified by her childhood experiences.

According to BOP medical records, Ms. Young has been diagnosed with Depression, PTSD, and Anxiety Disorder.[38] Ms. Young was making strides in her mental-health progress, but Officer Nunley's abuse exacerbated her symptoms.[39] When Ms. Young arrived at FCC Victorville, for example, she was visibly distressed and crying.[40] Ms. Young told the doctor about the trauma she experienced at FCI Dublin, and that the medications that she had been prescribed were not helping.[41] The response: more medication and monitoring.[42]

---

[37] PSR at 11–12, ¶ 48–49, ECF No. 25.
[38] Ex. C at 1, 16, 17, 28, 28, 29 (Medical Records).
[39] Ex. A at 17–19, ¶ 105–17 (Declaration).
[40] Ex. C at 1 (Medical Records).
[41] *Id.*
[42] *Id.*

6

In addition to medications, Ms. Young has been provided with group counseling.[43] But that treatment is ineffective. Ms. Young does she feel comfortable sharing in the same carceral setting where she was abused.[44] Ms. Young has tried to receive one-on-one counseling, but she has been denied.[45] Another mental-health issue she faces she is constant re-traumatization. Reminders of Officer Nunley's abuse and harassment are everywhere. From other inmates having sex, to the sound of keys, to simply being in the prison itself.[46] Ms. Young is not safe.

### E. Ms. Young has made the best of a horrendous situation and continues to become a better version of herself.

Despite the burden she carries, Ms. Young has found ways to cope with her new normal. Ms. Young has learned how to crochet and receives joy from gifting the items she makes to fellow inmates.[47] Ms. Young also uses what she has learned from the myriad of programs she has completed during her sentence.[48] Programming changed Ms. Young's perception.[49] Ms. Young has reflected on how she grew up, the people around her, and her past actions.[50] She has turned away from drugs and has not used since her arrest.[51] The person who Ms. Young is today is not the person she was in 2018. This is exemplified by the

---

[43] *Id.* at 51–53, 190.
[44] Ex. A at 18, ¶ 114–16 (Declaration).
[45] *Id.* at 19, ¶ 118.
[46] *Id.* at 18, ¶ 112–13.
[47] *Id.* at 21, ¶ 134.
[48] *See generally* Ex. B (BOP Records).
[49] Ex. A at 20–21, ¶ 128–36 (Declaration).
[50] *Id.* at 20, ¶ 128.
[51] *Id.* at 20, ¶ 129.

fact that Ms. Young has not received a single infraction. [52] Ms. Young wants to be a role model. She wants to use the skills and her personal experience to uplift others.[53]

## II.   Legal Argument

As the Government notes, to grant Ms. Young's motion, this Court must find she demonstrates "extraordinary and compelling reasons" that justify a sentence reduction. 18 U.S.C. § 3852(c)(1)(A). Ms. Young's abuse qualifies under this standard.

**A. Ms. Young's sexual abuse at FCI Dublin is an "extraordinary and compelling" reason given its gravity, her history, her cooperation with law enforcement, and her lack of mental health.**

When courts evaluate whether carceral sexual abuse is "extraordinary and compelling," they typically look at four factors: (1) the gravity of the abuse—i.e., attempted or actual sexual abuse; (2) whether the victim has a history of suffering sexual abuse; (3) cooperation with authorities; and (4) a lack of adequate mental-health services in prison. *See, e.g.*, *United States v. Brocoli*, 543 F.Supp.3d 563, 568-69 (S.D. Ohio 2021); *United States v. Brice*, No. 13-CR-206-2, 2022 WL 17721031, at *5 (E.D. Pa. Dec. 15, 2022). Although there is no hard-and-fast rule, courts have found that a combination of at least three of those factors amounts to "extraordinary and compelling." *Id.*

Ms. Young demonstrates every single factor.

First, the gravity of the abuse here was of the utmost severity. Ms. Young was sexually harassed, sexually assaulted, physically assaulted, and raped.[54] In *Brocoli*, an attempted rape by a fellow inmate was a horrendous circumstance that supported the finding

---

[52] *Id.* at 20, ¶ 131.
[53] *Id.* at 21, ¶ 135–36.
[54] *Id.* at 1, ¶ 2.

that release was appropriate. *Brocoli*, 543 F.Supp.3d 568-69. And, in *Brice*, a victim being orally raped by a correctional officer was an "extraordinary and compelling" circumstance that supported the individual's release. *Brice*, 2022 WL 17721031, at *4. The gravity of Ms. Young's abuse supports a finding that she has presented an "extraordinary and compelling reason" for immediate release.

Second, Ms. Young has a history of sexual abuse both as a child and an adult.[55] In both *Brocoli* and *Brice*, the courts concluded that the victims' history of sexual abuse prior to incarceration intensified and compounded the trauma of the abuse, making release even more appropriate. *Brocoli*, 543 F.Supp.3d 568-69; *Brice*, 2022 WL 17721031, at *5. This finding is also supported by Dr. Terry A. Kupers, a psychiatrist who specializes in the impact and trauma of carceral sexual assault. Dr. Kupers reviewed the facts of Ms. Young's abuse at FCI Dublin and a summary of her childhood trauma and prepared the attached report.[56] Dr. Kupers notes that multiple traumas create "complex PTSD."[57] In fact, repeated traumas "multiply the emotional damage and preclude real healing."[58] Dr. Kupers' report substantiates courts' conclusions that prior trauma compounds carcel sexual abuse. Thus, Ms. Young's history supports a finding of "extraordinary and compelling" reasons.

The third factor Ms. Young demonstrates is willingness to cooperate with government officials. *See, e.g.*, *Brice*, 2022 WL 17721031, at *5. Her cooperation led, in part,

---

[55] PSR at 11–12, ¶ 48–49, ECF No. 25.

[56] Dr. Kupers is a board-certified psychiatrist, Institute Professor Emeritus at the Wright Institute, Distinguished Life Fellow of the American Psychiatric Association, and an expert on the psychiatric effects of prison conditions and correctional mental health issues who has testified over thirty times about the psychiatry in prisons. Ex. D at 1–2 (Report).

[57] *Id.* at 15.

[58] *Id.*

to Officer Nunley pleading guilty.[59] Moreover, Ms. Young reported Officer Nunley's abuse to several FCI Dublin staff members.[60]

Dr. Kupers offers some additional insight as to what makes Ms. Young's cooperation, so "extraordinary and compelling." Dr. Kupers notes that prison rape is underreported.[61] Underreporting is in part due to prison's 'culture of misogyny.'[62] This culture leads to officers "demean[ing] and disrespect[ing]" incarcerated women so that they can manipulate them.[63] Officers also use the grooming process to distort their victim's perception of the situation.[64] An officer begins by appearing friendly or interested in his victim, then makes inappropriate sexual comments and touches.[65] After that barrier is broken, the officer opens up about his personal life.[66] Finally, he victimizes her.[67]

Ms. Young, as a woman with a history of sexual abuse, had to withstand a targeted attack aimed to manipulate her. Officer Nunley followed the grooming approached outlined by Dr. Kupers. Moreover, Officer Nunley used his proximity and authority to intimidate and trap Ms. Young.[68] Yet, Ms. Young persevered and reported.

However, Ms. Young also had to overcome inaction by other BOP staff members. Dr. Kupers states that BOP staff members learn that their comrade is sexually abusing an

---

[59] Ex. A at 16, ¶ 97 (Declaration); *see United States v. Nunley*, 3:23-cr-00213-YRG, Plea Agreement, ECF No. 14.
[60] Ex. A at 3, 13, 15, ¶ 21–26, ¶ 67–68, ¶ 76–78 (Declaration).
[61] Ex. D at 3–4 (Report).
[62] *Id.* at 7–10.
[63] *Id.* at 7.
[64] *Id.* at 6.
[65] *Id.* at 6.
[66] *Id.* at 6.
[67] *Id.* at 6.
[68] Ex. A at 12, ¶ 46, ¶ 51 (Declaration).

inmate they may "simply look the other way."[69] This indifference to rape is largely due to the "Blue Code," an "unofficial code of conduct [that] prohibits" correctional officers from snitching on each other.[70] The Blue Code is an "active ingredient in . . . the sexual abuse of women by prison staff."[71] This disincentivizes reporting.

Moreover, Ms. Young faced retaliation for reporting officer misconduct by being placed in the SHU. As Dr. Kupers states, the possibility of being placed in solitary confinement causes women to not report their abuse.[72] Ms. Young was placed in the SHU "for [her] safety" when her rapist was not at the facility.[73] Given the barriers that Ms. Young faced, her cooperation also supports a finding of "extraordinary and compelling reasons."

Lastly, Ms. Young is unable to receive the mental-health treatment that she needs in prison. Like in *Brocoli*, the BOP has not provided the mental-health services Ms. Young needs to treat *her* trauma. According to Dr. Kupers, this includes talk therapy, both individually and in a group setting.[74] But there must also be "be quality visits with loved ones, as well as participation in meaningful rehabilitation programs, educational pursuits, work opportunities, and so forth."[75] Dr. Kupers notes that medications "alone do not constitute adequate treatment."[76]

---

[69] Ex. D at 7 (Report).
[70] *Id.* at 10.
[71] *Id.*
[72] *Id.* 11–13.
[73] Ex. A at 16, ¶ 88 (Declaration).
[74] Ex. D at 19–20 (Report).
[75] *Id.* at 20.
[76] *Id.*

Dr. Kupers also identifies the three phases that someone healing from trauma must progress through: (1) safety, (2) remembrance and mourning, and (3) reconnection.[77] Before Ms. Young can reach stages two and three, she must be safe.[78] And, Ms. Young must proceed through the phases in the correct order, lest she suffer additional harm.[79] Unfortunately, Ms. Young cannot achieve this first stage while in custody.

As Dr. Kupers explains, safety is not just about being free from the grasp of the perpetrator but also safety from unsafe internal proclivities like anxiety, depression, and suicidal ideation, all which Ms. Young has experienced.[80] Moreover, "it is impossible to create a safe situation because of continu[ed] captivity (i.e., incarceration)."[81] This is in large part due to the reminders of sexual trauma in the prison setting.[82] Ms. Young's mental-health circumstances support a finding of "extraordinary and compelling reasons."

**B. Ms. Young's sex abuse is an "extraordinary and compelling" under the proposed Amendments to the U.S. Sentencing Guidelines.**

The new Amendments to the U.S. Sentencing Guidelines also support immediate release. As of November 1, 2023, the U.S. Sentencing Guidelines Manual were amended to recognize that carceral sexual abuse is an "extraordinary and compelling reason" under 18 U.S.C. § 3582(c)(1)(A). U.S. SENT'G GUIDELINES MANUAL § 1B1.13(a)(4).

To qualify under the new Guidelines, the movant must have suffered "sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2)," committed by, or at the direction

---

[77] *Id.* at 17.
[78] *Id.*
[79] *Id.* 17–18.
[80] *See generally* Ex. C (Medical Records); Ex. D at 16 (Report).
[81] Ex. D at 17 (Report).
[82] *Id.*

of, a correctional officer. U.S.S.G. § 1B1.13(a)(4). Moreover, the misconduct must be established by criminal conviction, a finding of civil liability, or administrative finding. *Id.* Ms. Young meets all these requirements.

First, Ms. Young experienced sexual abuse as defined by 18 U.S.C. § 2246(2). Under § 2246(2) a sexual act occurs when the penis penetrates the vulva, or when there is "contact between the mouth and the penis." 18 U.S.C. § 2246(2)(A)(B). Officer Nunley, a federal correctional officer with the Bureau of Prisons, penetrated Ms. Young's mouth and vulva.[83] He admitted as much in his plea agreement.[84]

Second, Officer Nunley's misconduct has been established in a criminal proceeding. Although he has not yet been sentenced, he entered into a plea agreement where he admitted to raping Ms. Young. [85] Moreover, Officer Nunley has been terminated from the BOP so there was surely an administrative finding.[86] Thus, Ms. Young's sexual abuse qualifies as an "extraordinary and compelling reason" under the new Guidelines.

**C. Section 3553(a) weighs in favor of Ms. Young's immediate release.**

The final analysis this Court must undertake is to determine whether the 18 U.S.C. § 3553(a) factors favor a reduced sentence. *See* 18 U.S.C. § 3582(c). The U.S. Supreme Court has held that post-offense developments must be considered under the § 3553(a) analysis. *See Pepper v. United States*, 562 U.S. 476, 490-93 (2011). Although the circumstances of Ms.

---

[83] *United States v. Nunley*, 3:23-cr-00213-YRG, Plea Agreement at 3, ECF No. 14.
[84] *Id.*
[85] *Id.*
[86] Lawrence Richard, *California Correctional Officers Fired for Sexually Abusing Inmates at Federal Women's Prison Plead Guilty*, Fox News (Jul. 14, 2023, 8:02 AM), https://tinyurl.com/bdhkn5u2.

Young's offense and her criminal history qualified her for a 132-month sentence originally, this Court never could have imagined what the sentence would look like in practice. And, for the following reasons, an adjustment to "time served" is appropriate.

**1.      Reducing Ms. Young's sentence will not diminish the seriousness of the offense and provides a just punishment.**

When an individual suffers sexual abuse in custody, a lesser sentence may be justified, despite the seriousness of the original offense. No one, no matter the crime, should be sentenced to a term of imprisonment that includes rape, particularly at the hand of someone who was charged with protecting them. Simply stated, the punishment that Ms. Young has endured is lightyears above any sentence that this Court could ever impose in terms of severity for her crime of conviction. Given the conditions of confinement, a sentence of time served is just. This Court would not be alone in concluding that release following sexual abuse does not diminish the seriousness of the original offense. In fact, several courts have made that determination based on the abuse at FCI Dublin. *See, e.g.*, *United States v. Chavira*, No. 18-CR-4216-CAB, 2023 WL 3612389, at *1 (S.D. Cal. May 23, 2023); *United States v. Brooks*, 16-cr-00363-01-BCW, Doc 101 (W.D. Mo. June 30, 2023); *United States v. Smith*, No. 12-CR-00253-ADA-BAM-2, 2023 WL 5487308, at *2 (E.D. Cal. Aug. 24, 2023).

**2.      Ms. Young's release is important so that she can get treatment.**

A reduction in sentence is also appropriate given the BOP's inability to provide Ms. Young with "medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D); *see also United States v. Edwards*, 595 F.3d 1004, 1011 (9th Cir. 2010) (affirming a district court's decision to impose a probationary sentence, in part, because of the BOP's inability to provide adequate treatment); *United States v. Autery*, 555 F.3d 864, 877

(9th Cir. 2009) (finding "not unreasonable" a district court's conclusion that "prospects for rehabilitation [were] greater out of prison than in" given the particular facts of the case).

As outlined above, *see supra* sections I.D and II.A, Ms. Young has not received mental-health treatment "in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). Given the culture of the BOP and Ms. Young's specific circumstances, a time-served reduction will further § 3553(a)(2)(D).

**3.    Ms. Young does not need any additional prison time to be deterred.**

This Court rightfully paid special attention to the need for deterrence, *see* 18 U.S.C. § 3553(a)(2)(B), at the time of Ms. Youngs's sentencing.[87] But given what has happened, additional time is not needed to ensure that she will remain law abiding. First, one need look no further than this case to see that Ms. Young has a newfound respect for the law. Ms. Young went from engaging in criminal conduct to reporting it.[88] And her reporting of Officer Nunley was just the beginning. Despite the risk of retaliation, Ms. Young continues to inform BOP staff when she sees illicit activity.[89]

Second, Ms. Young has participated in programming that has transformed her mindset. Ms. Young has worked hard to rehabilitate herself by participating in many educational programs while in BOP custody, including "Women's Basic Financial Literacy Program," "What the Bible Teaches," the "Drug Abuse Education Course," and "Crucial Decision Making."[90]

---

[87] Sent. Tr. at 17, ¶ 18–19.
[88] Ex. A at 3, 13, 15–16, ¶ 21, ¶ 67, ¶ 76, ¶ 78, ¶ 93, ¶ 97 (Declaration).
[89] *Id.* at 18, ¶ 113.
[90] *See* Ex. B (BOP Records); *see also* Ex. E (BOP Records).

Third, Ms. Young has developed the coping mechanisms she needs to make good decisions. This Court recognized at Ms. Young's sentencing that her trauma-laden history contributed to her poor decision-making and judgment.[91] However, Ms. Young has shown substantial growth. Again, Ms. Young has remained clean and sober for more than five years,[92] despite the constant triggers and mental-health difficulties. Even with the drug use around Ms. Young, she has chosen sobriety.[93]

Fourth, Ms. Young's release and the ability to receive treatment will help satisfy deterrence. Recidivism decreases when individuals can receive proper treatment.[94] In fact, individuals are at a greater risk of recidivism when their mental health and substance abuse is not properly treated because that then affects employment and family relationships.[95] In other words, without proper treatment, "incarceration [] undermine[s] [the defendant's] rehabilitation." *Autery*, 555 F.3d at 877.

### 4. Ms. Young's release plan ensures that she will be an asset to her community and have strong familial support upon release.

Finally, Ms. Young has a solid release plan that will set her up for success.[96] Ms. Young has spent her time in prison working on both personal and employment skills. Ms. Young recognizes she must have financial security, and she has spent the last five years

---

[91] Sent. Tr. at 17, ¶ 9–16; *see* Giulia Lausi et al., *Decision-Making and Abuse, What Relationship in Victims of Violence?*, Int'l J. Env't Res. Pub. Health (2023) (discussing the link between sexual and physical violence by a partner and reduced victim's decision making).

[92] Ex. A at 20, ¶ 129 (Declaration).

[93] *Id.*

[94] Kristen M. Zgoba, et. al, *Criminal Recidivism in Inmates with Mental Illness and Substance Use Disorders*, 48 J. AM. ACAD. PSYCHIATRY LAW 2, 2 (2020).

[95] Christopher Wildeman & Bruce Western, *Incarceration in Fragile Families*, 20 Future Children 157, 171 (2010), https://files.eric.ed.gov/fulltext/EJ901827.pdf.

[96] *See generally* Ex. F (Release Plan).

working in customer service.[97] Ms. Young's stellar skills and exceptional dedication earned her the Phoneticall Excellence Award.[98] If Ms. Young needs more support, Arizona offers workforce reentry services to former incarnated people.[99] Ms. Young has opportunities.

Not only will Ms. Young be able to support herself financially, but she will do so in a loving and supportive environment. As the Government notes, the BOP has already approved Ms. Young's release address. She will live with her son, Richard and his finance, Christina. Both hold financially secure jobs: Richard works as a truck driver and Christina works from home as a paralegal. Neither use drugs and will serve as support for Ms. Young's journey of successful reentry and sobriety.

### III.    Conclusion

The abuse that Ms. Young has suffered in BOP custody and the willful ignorance of those around her warrants immediate release. Ms. Young respectfully requests that this Court grant the Government's motion to reduce her sentence to "time served" and start Ms. Young on her previously imposed term of supervised release.

Dated: November 2, 2023

Respectfully submitted,

*/s/ Alison K. Guernsey*
Alison K. Guernsey
Attorney for Yolanda Young
Clinical Professor
*Pro Hac Vice Admission*
UNIVERSITY OF IOWA COLLEGE OF LAW
FEDERAL CRIMINAL DEFENSE CLINIC

---

[97] Ex. A at 1, ¶ 7–8 (Declaration).
[98] Ex. B at 5 (BOP Records).
[99] *Reentry Services*, Arizona Department of Economic Security, https://tinyurl.com/muhdsf79.

Student Practitioners:
- Avery Epstein
- Tanner Duncan

380 Boyd Law Building
Iowa City, IA 52245
NY #4667366
(319) 335-9023 phone
alison-guernsey@uiowa.edu

## Certificate of Service

I hereby certify that on November 2, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following: Ben Goldberg, Assistant United States Attorney.

*s/ Alison K. Guernsey*
Alison K. Guernsey